UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE SEATTLE AREA PLUMBING & PIPEFITTING INDUSTRY HEALTH & WELFARE TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>J.P. FRANCIS & ASSOCIATES, INC.,<br><br>Defendant. | CASE NO. 2:21-cv-01040-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs Boards of Trustees of the Seattle Area Plumbing & Pipefitting Industry Health & Welfare Trust, Seattle Area Plumbing & Pipefitting Industry Journeymen and Apprentice Training Trust, Western Washington U.A. Supplemental Pension Plan, Washington State Plumbing & Pipefitting Industry Pension Plan, International Training Fund, and Plumbers & Pipefitters National Pension Fund's (collectively, Trust Funds) Motion for Default Judgment against Defendant J.P Francis & Associates, Inc. Dkt. # 28. The motion is unopposed. *See generally* Dkt. The Court has considered the motion, the record, and

the applicable law.  Being fully advised, the Court GRANTS in part and DENIES in part the motion.

## II

### BACKGROUND

The Trust Funds are jointly administered labor-management employee-benefit trust funds created under Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c), and organized and operated under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001, *et seq. as amended*.  *See* Dkt. # 28 at 2.

Defendant, a Washington corporation, is a signatory to a collective bargaining agreement (CBA) with the Mechanical Contractors Association and the Local 32 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada AFL-CIO.  *See* Dkt. ## 1, 6, 14 at 3.  As a CBA signatory, Defendant is bound by each Trust Fund's Trust Agreement, which are incorporated into the CBA by reference.  *See* Dkt. # 1 at 3; *see also* Dkt. # 6 at 2.

The CBA and Trust Agreements (collectively, the Agreements) require all signatory employers to submit monthly remittance reports "listing the employees performing covered work, the covered hours worked by those employees, and the contributions owed to the Trust Funds for the hours worked."  Dkt. # 14 at 5.  The Agreements also require employers to submit monthly contributions to the Trust Funds for each employee for whom contributions are due.  *See* Dkt. # 1 at 3; *see also* Dkt. # 6 at 2.  If an employer fails to submit its required contributions by the fifteenth day of the following month, it must pay damages for its delinquent period.  *See* Dkt. # 14 at 5, 26.

*Allegations.*  Plaintiffs allege as follows: Defendant failed to fulfill its obligations under the Agreements between November 2020 and December 2021.  *See* Dkt. # 28 at 7.  Between

November 2020 and May 2021, Defendant completed and submitted its monthly remittance reports to the Trust Funds, but it failed to pay the full extent of its required contributions. *Id.* at 5. Defendant therefore owes the Trust Funds $84,261.80 to cover unpaid fringe benefits, liquidated damages, prejudgment interest, and attorney fees for the November 2020 to May 2021 delinquent period. *Id.* at 8–9. Defendant also owes the Trust Funds $100,151.45 to cover unreported and unpaid contributions, as well as associated interest, liquidated damages, and audit fees, throughout the course of the January 2020 through December 2021 audit period. *Id.* at 5.

On August 4, 2021, Plaintiffs filed their complaint. Dkt. # 1. Plaintiffs' sole cause of action for breach of the CBA seeks to recover from Defendant the delinquent contributions, liquidated damages, interest, audit fees, and attorney fees and litigation costs. *Id*. at 2–4. Defendant answered Plaintiffs' complaint on September 13, 2021. Dkt. # 6. In January 2023, Plaintiffs moved for summary judgment. Dkt. # 13. On January 31, 2023, Defendant's counsel, Mr. Garg, moved to withdraw as counsel of record. Dkt. # 18. On February 14, 2023, the Court granted Mr. Garg's motion, struck Plaintiffs' motion, and granted Defendant 14 days to acquire substitute counsel. Dkt. # 23. Substitute counsel never appeared. *See generally* Dkt. In March 2023, the Clerk entered an order of default against Defendant. Dkt. # 27. Plaintiffs later moved for default judgment against Defendant, seeking Defendant's unpaid contributions to the Trust Funds, liquidated damages, interest on the unpaid contributions, audit fees, and attorney fees and litigation costs as provided by the Trust Agreements and Section 502 of ERISA, 29 U.S.C. § 1132(g)(2). *See* Dkt. # 28.

ORDER - 3

# III

## DISCUSSION

A.     Legal Standards

If a defendant fails to plead or otherwise defend, "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. Fed. R. Civ. P. 55(b)(2); *see Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). On default judgment motions, "[t]he court must accept all well-pled allegations of the complaint as established fact, except allegations related to the amount of damages." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1133 (W.D. Wash. 2019) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Courts typically consider these seven factors when evaluating a request for a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Because default judgments are disfavored, "default judgment is appropriate only if the well-pleaded factual allegations of the complaint suffice to establish a plaintiff's entitlement to a judgment under the applicable law." *Dentist Ins. Co. v. Luke St. Marie Valley Dental Grp.*, P.L.L.C., No. 2:21-cv-01229-JHC, 2022 WL 1984124 (W.D. Wash. Jun. 6, 2022) (citing *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 855 (9th Cir. 2007)).

B.     Application of *Eitel* Factors

All seven *Eitel* factors support Plaintiffs' motion. Default judgment is therefore an appropriate remedy in this case.

ORDER - 4

        1.      Prejudice to Plaintiffs

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted). Federal courts have exclusive jurisdiction over ERISA claims. 29 U.S.C. § 1132(e). As Defendant never obtained substitute counsel to defend this action after Mr. Garg withdrew, default judgment is Plaintiffs' only means for recovery. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022) (first *Eitel* factor favored entry of default judgment when the defendant "failed to respond or otherwise put forth a defense"). Thus, this factor supports default judgment.

        2.      Merits of Plaintiffs' claims and sufficiency of complaint

"Courts often consider the second and third *Eitel* factors together." *Developers Sur. and Indem. Co. v. View Point Builders, Inc.*, No. C20-0221JLR, 2020 WL 3303046, at *5 (W.D. Wash. Jun. 17, 2022). Plaintiffs say that Defendant failed to pay employee contributions to the Trust Funds—as required by the CBA, the Trust Agreements, and ERISA—and is therefore liable for unpaid contributions and associated late fees. *See* Dkt. # 28.

Under Section 515 of ERISA, employers must pay required contributions "under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145. To establish a Section 515 claim for unpaid contributions, Plaintiffs must show that "(1) the trust fund is a multi-employer plan as defined by 29 U.S.C. § 1002(37); (2) the defendant is an employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance with the plan.'" *Bd. of Trustees of Sheet Metal Workers Health Care Plan of N. California v. Gervasio Env't Sys.*, No. C 03-04858 WHA, 2004 WL 1465719, at *1 (N.D. Cal. May 21, 2004). If a plaintiff brings an action under Section 515 and wins a favorable

ORDER - 5

judgment, the court must award the plaintiff damages in accordance with Section 502 of ERISA. 29 U.S.C. § 1132(g)(2).

As noted above, the Court accepts all well-pleaded allegations in the complaint as established fact. *See UN4 Prods*, 372 F. Supp. 3d at 1133. Accepting such allegations, the complaint suffices to state the cause of action directed against Defendant. The Trust Funds are multi-employer plans under 29 U.S.C. § 1002(37), and Defendant is an employer obligated to contribute to the Trust Funds under the CBA. *See* Dkt. ##1, 6, 14, 28. The record also contains evidence showing that Defendant failed to contribute to the Trusts in accordance with the plan during the relevant period. *See, e.g.*, Dkt. # 14 at 6, 11, 132–134, 136–141. Plaintiffs have thus established an ERISA claim for unpaid contributions and late fees. Consequently, the second and third *Eitel* factors support default judgment.

3. Sum of money at stake

This factor "considers whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Estate of Wheeler*, No. C19-0364JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). Because Plaintiffs seek to recover Defendant's unpaid contributions, along with statutorily mandated interest, liquated damages, audit fees, and reasonable attorney fees incurred while trying to enforce section 29 U.S.C. § 1145, there is direct proportionality between the harm caused and the amount of money requested. Thus, the fourth *Eitel* factor supports default judgment.

4. Possibility of dispute over material facts

There is no sign that the material facts are in dispute. And again, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

ORDER - 6

1977). Defendant did not continue to defend this action, and the Clerk correctly entered default against Defendant. *See* Dkt. # 27.

       5.      Excusable neglect

The sixth *Eitel* factor assesses whether a defendant's default for failure to appear was because of excusable neglect. *Bds. of Trs. of Inland Empire Elec. Workers Welfare Tr. v. Excel Elec. Servs., Inc.*, No. 2:21-CV-00200-MKD, 2022 WL 1243663, at *4 (E.D. Wash. Apr. 26, 2022). Generally, courts do not find excusable neglect when defendants were properly served with the complaint. *See, e.g.*, *Maersk Line v. Golden Harvest Alaska Seafood LLC*, No. C20-1140-JLR-MLP, 2020 WL 6083464, at *4 (W.D. Wash. Sept. 30, 2020), *report and recommendation adopted*, No. C20-1140 JLR, 2020 WL 6077419 (W.D. Wash. Oct. 15, 2020).

Defendant's default was not because of excusable neglect. Plaintiffs properly served Defendant. *See* Dkt. # 2. Additionally, Defendant was fully aware of the ongoing proceedings against it, as shown by Defendant's answer to the complaint, representation by counsel, and appearances before the Court before February 2023. *See generally* Dkt. Further, when the Court granted Mr. Garg's motion to withdraw, the Court warned Defendant that default judgment may be granted if substitute counsel did not make a timely appearance. *See* Dkt. # 23 at 4. In February 2023, Defendant had the opportunity to obtain new counsel and avoid default; evidently, Defendant declined to do so. This factor favors entry of default judgment.

       6.      Policy favoring decision on the merits

Because cases "should be decided upon their merits whenever reasonably possible," this factor often disfavors default judgment. *Eitel*, 782 F.2d at 1472. But Defendant's failure to appear "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Empl. Painters' Trust v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591 (W.D. Wash. July 6, 2020)

(explaining that when a defendant to appear, the policy favoring deciding cases upon their merits does not preclude the entry of default judgment). In this case, the seventh *Eitel* factor also supports default judgment.

In sum, all seven *Eitel* factors support default judgment.

C.  Damages

"Because the Court does not accept the amount of claimed damages as true in a default judgment motion, it must assess whether Plaintiff's claimed damages are appropriate to award." *Caisse de Retraite du Pers. Navigant v. Renou*, No. 2:22-cv-01002-JHC, 2022 WL 17667902, at *3 (W.D. Wash. Dec. 14, 2022) (citing *Geddes*, 559 F.2d at 560). A plaintiff bears the burden of proving that its requested damages are reasonable and supported by evidence. *Bd. Of Trs. Of the Boilermaker Vacation Tr. v. Skelly, Inc.*, F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

Under Section 502 of ERISA, if a fiduciary brings an action for or on behalf of a plan under Section 515 and wins a favorable judgment, the court must award the plan:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . , [and] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2). Plaintiffs seek recovery against Defendant under Section 502 and the Trust Agreements for three categories: (1) reported but unpaid contributions and associated fees for the delinquent period between November 2020 and May 2021, (2) unreported and unpaid contributions and associated fees for the audit period of January 2020 through December 2021, and (3) attorney fees and costs incurred by Plaintiffs in relation to this action. *See* Dkt. # 28. The Court denies Plaintiffs' request for the first category but grants Plaintiffs' requests for the second and third categories.

ORDER - 8

     1.       Reported but unpaid contributions and associated fees from November 2020 through May 2021

Plaintiffs request $84,261.80 in damages for Defendant's delinquent period, comprised of $55,963.03 in unpaid fringe benefit contributions, $15,496.70 in liquidated damages, $12,102.07 in prejudgment interest, and $700 in "referral attorney fees." *Id.* at 2–3. For the reasons below, the Court denies Plaintiffs' request for damages under this category without prejudice.

The Bough declaration and the attachments thereto appear to support Plaintiffs' request for $55,963.03 in unpaid fringe benefits. *See* Dkt. #14. But Plaintiffs have not submitted copies of the unfunded remittance reports submitted by Defendant. *See generally* Dkt. The Court is thus unable to determine that the requested amount is warranted and distinct from the unpaid contributions requested below for the January 2020 through December 2021 audit period. There are also discrepancies in the total amount of money requested for this delinquent period. *See, e.g.*, Dkt. # 1 at 3 (Plaintiffs allege $57,899.65, not $55,963.03, in unpaid contributions); Dkt. # 28 at 5 (Plaintiffs state $84,039.98, not $84,261.80, is owed based on Defendant's completed and submitted unfunded remittance reports). Thus, the Court cannot award Plaintiffs unpaid fringe benefits for now.

Plaintiffs have also failed to adequately explain the liquidated damages they seek. The Trust Agreements provide that in the event of litigation, the delinquent employer must pay liquidated damages to the Trust Funds, assessed at 10 percent of the contributions owed as a result of the delinquency to the Plumbers and Pipefitters National Pension Fund and 20 percent of the contributions owed as a result of the delinquency for all other Trust Funds. Dkt. # 14 at 86–87, 94–95, 100–101, 111, 119–120. Plaintiffs request $15,496.70 in liquidated damages, but 20 percent of the alleged unpaid contributions ($55,963.03) is $11,192.61. The calculations sheet submitted by Plaintiffs also lists 10 percent as the "liquidated damage rate," which

conflicts with the 20 percent liquidated damage rate employed elsewhere in Plaintiffs' evidence. Dkt. # 14 at 132. Plaintiffs have therefore not sufficiently justified a liquidated damages award in the amount of $15,496.70.

Finally, the Court cannot determine whether Plaintiffs' requests for unpaid interest and "referral attorney fees" are proper based on Plaintiffs' evidence. Each Trust Agreement provides for the assessment of interest on delinquent funds. Dkt. # 14 at 7. But given the lack of clarity with respect to the total amount of owed contributions and the variation in interest rates among the Trust Agreements, the Court cannot confirm whether $12,102.07 reflects a proper interest award  *Id*. Further, although ERISA and the Trust Agreements provide for an award of reasonable attorney fees, there is no information in the record explaining the basis for the requested $700 in "referral attorney fees." *See generally* Dkt. # 28; *see also Bd. of Trs. of Auto. Machinists Pension Tr. v. Ross Island Sand & Gravel Co.*, No. C18-0571JLR, 2018 WL 4051806, at *2 (W.D. Wash. Aug. 24, 2018) (denying default judgment and requiring plaintiff to explain "referral attorney fees" in an amended motion). Thus, Plaintiffs have not proved that their requested damages for the November 2020 to May 2021 period are reasonable and supported by evidence. Thus, the Court denies Plaintiffs' request for $84,261.80 in damages without prejudice.

2. Unreported and unpaid contributions and associated fees from January 2020 through December 2021

Plaintiffs request $100,151.45 to cover $80,310.68 in unreported and unpaid contributions, $14,503.30 in liquidated damages, $3,814.20 in interest, and $1,523.27 in audit fees for the January 2020 to December 2021 audit period. Dkt. # 28 at 3. Per the Trust Agreements, in the event of delinquency, the Trusts may collect unpaid contributions, liquidated damages and interest, and audit fees at the expense of the employer. *See* Dkt. # 14 at 6–11.

On April 6, 2022, Anastasi Moore & Martin, PLLC conducted an audit of Defendant's payroll during January 2020 through December 2021. *Id.* at 136–137. Plaintiffs' auditor submitted a declaration describing her payroll audit. *See* Dkt. # 15. She first reviewed Defendant's payroll documentation, including its payroll register reports, tax filings, state quarterly unemployment insurance reports, and Trust Fund remittance reports for the period of January 2020 through December 2021. *Id.* at 2. After examining the payroll documentation, the auditor explained her methodology for calculating the unpaid benefit contributions, liquidated damages, and interest values according to the Trust Agreements. *Id.* at 3. Plaintiffs also provided a copy of the audit report, along with attached tables further detailing the calculations. *See id.* at 6–12. The auditor concluded that Defendant owed a sum of $100,151.45 to the Trust Funds, comprised of $80,310.68 in unpaid employee benefit contributions, $14,503.30 in liquidated damages, $3,814.20 in interest (calculated through April 26, 2022), and $1,523.27 in audit fees. Dkt. # 15 at 2–3, 8.

From the auditor's declaration and the audit report, the Court can ascertain how Plaintiffs calculated damages for the January 2020 through December 2021 period. *See Masonry Indus. Tr. Admin., Inc. v. LeProwse Constr., Inc.*, No. 3:17-CV-1266-SI, 2019 WL 4237755, at *2–3 (D. Or. Sept. 6, 2019) (concluding even without an auditor declaration that the plaintiff adequately proved damages based in part on a presumption that the auditor was knowledgeable and "applied the correct rates in making the various calculations"). Plaintiffs have thus provided sufficient evidence to support a damage award of $100,151.45 against Defendant.

3. Attorney fees and costs

Plaintiffs request $5,842.50 in attorney fees and $521 in litigation costs. Dkt. # 28 at 9. Under Section 502 of ERISA and the Trust Agreements, Plaintiffs are entitled to recover reasonable attorney fees and costs for suits brought against delinquent employers. *See* 29 U.S.C.

§ 1132(g)(2); Dkt. # 14. In the Dwarzski declaration, Plaintiffs' counsel states that she spent 20.5 hours working on this matter, at a rate of $285 per hour. Dkt. # 16 at 2. The Court finds Plaintiffs' request for $5,842.50 in attorney fees and $521 in litigation costs to be reasonable. *Id.* at 10. Plaintiffs are thus entitled to recover $6,363.50 against Defendant for attorney fees and costs.

## IV
### Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Default Judgment. Dkt. # 28. Specifically, the Court hereby ORDERS:

1. The Court GRANTS default judgment against Defendant J.P. Francis & Associates, Inc. because all seven *Eitel* factors favor the entry of default judgment.

2. The Court GRANTS Plaintiffs' request for $100,151.45 in unreported and unpaid contributions, liquidated damages, interest, and audit fees for the January 2020 to December 2021 audit period. Plaintiffs may also collect interest on the unreported and unpaid contributions and liquidated damages, totaling $94,813.98. Interest shall accrue on the outstanding contributions at the rate set forth in the Trust Agreements, from April 6, 2022, until paid.

3. The Court GRANTS Plaintiffs' request for attorney fees and litigation costs in the amount of $6,363.50.

4. The Court DENIES without prejudice Plaintiffs' request for $55,963.03 in unpaid fringe benefit contributions, $15,496.70 in liquidated damages, $12,102.07 in interest, and $700 in "referral attorney fees" for the November 2020 through May 2021 delinquent period. Plaintiffs may submit a supplemental brief, along with additional evidence, that offers a more thorough explanation of their calculations and the damages they seek for the November 2020 through May 2021 delinquent period. To the extent Plaintiff intends to recover these damages,

Plaintiffs must file a supplemental brief by no later than July 14, 2023. If Plaintiffs fail to timely file a supplemental brief, the Court will enter final judgment consistent with this Order.

     5.     The Court DEFERS entry of final judgment.

     6.     The Court DIRECTS the Clerk to mail a copy of this order to J.P. Francis & Associates, Inc.

Dated this 14th day of June, 2023.

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 13